AMENDED MEMORANDUM OF DECISION[2]
On April 6, 7, 10, 11 and 12, 2000, a consolidated trial took place in this court on the motion of the Department of Children and Families (DCF) for an order of temporary custody (OTC) and on an underlying neglect petition. For the reasons stated below, the court adjudicates the children to be neglected and commits them to DCF for a period of one year. In view of this decision, it is unnecessary to decide the motion for an OTC.
The gravamen of the neglect petition is that the mother has Munchausen Syndrome by Proxy, a rare disorder in which a parent, usually a mother, fabricates or even induces illness in her child in order to become involved in the medical system. The key piece of evidence was a videotape of the mother, taken at the Boston Children's Hospital on March 9, 2000, using a syringe to administer a substance to her three year old son Michael through a gastrostomy or "G" tube previously placed in his stomach. DCF alleges that the hospital staff had clearly ordered the mother not to administer any medication or other substance to Michael through his G tube, which she previously had permission to do, and that the syringe actually contained Valium, a tranquilizer that can depress respiration, and Valproic Acid, an anti-seizure medication. The mother admits putting the syringe into his G tube contrary to hospital orders, but claims that she was giving him only tea and water because he was dehydrated.
The court relies on the following evidence to credit the claim that the mother injected Michael with Valium on March 9. A half hour or more before the incident, a nurse discovered a syringe under a towel on Michael's bedside table. The mother CT Page 4609 unconvincingly explained that the syringe had been in her purse prior to being told not to give any medication to Michael, that the syringe had "spilled," and that she was "cleaning it out." The nurse disposed of this syringe. Shortly thereafter, the mother was alone with Michael and flatly rejected his request for a "pop" or "coke," thus suggesting that she was not overly concerned with his being dehydrated. The video then depicts the mother leaning over Michael, withdrawing a hand containing a syringe, and going over to the bedside table. A nurse later enters the room, has a conversation with the mother about the syringe, takes the syringe from the bedside table, and places it in a bag. Laboratory testing of the syringe likely used by the mother confirmed the presence of Valium and Valproic Acid.[3]
Although Michael was complaining and restless before receiving the syringe from the mother, he was lethargic and minimally arousable after it, a status that is consistent with the administration of Valium. Finally, the father reported to the hospital that the mother over-medicated Michael with Valium at home, thus supporting the claim that she did so at the hospital on March 9.
The fact that the mother secretly administered Valium to Michael against hospital orders supports the conclusion that it is more likely than not that the mother has Munchausen Syndrome by Proxy. A number of other facts support this conclusion. First, in 1999 when Michael reportedly had difficulty taking medication, the mother failed to attend behavioral therapy as recommended, falsely informed the hospital that therapy was unsuccessful, and instead requested the surgical insertion of the G tube, an intrusive procedure that a parent would normally not want a two year old child to undergo. Second, the father reported to the hospital that, when he was home, he did not see Michael having frequent or debilitating seizures as the mother claimed, that contrary to the mother's contentions Michael actually ate well, and that in general the mother made Michael out to be worse than he was. The father ultimately told the hospital and DCF that leaving the mother alone with Michael would not work and that he would rather see Michael in other people's hands.[4]
Third, and of crucial importance, Michael's medical condition improved dramatically after the mother's removal from Michael's care. Michael entered the hospital on March 7, 2000 with an almost three year history, based partly on reporting by the mother, of seizure disorder, lethargy, ataxia, vomiting, and difficulty feeding and taking medication. After the March 9 CT Page 4610 incident, the hospital evicted the mother and she had no further unsupervised contact with him. Four days later, Michael was walking and running up and down the hospital hallways. When the hospital discharged Michael on March 24, he was bright, oriented, very verbal, playful, and interactive. The hospital had tapered or eliminated his medications, he was taking the remaining medication well, and he was not having seizures. Michael was able to feed himself and in fact ate voraciously. His discharge prognosis was excellent. Aside from nystagmus of apparently congenital origins, occasional hand tremors, and possible developmental delays, Michael appears to be in good health in the foster home where he has been since March 26, 2000.
Finally, the court credits the testimony of Dr. Carole Jenny, a pediatrician with considerable expertise in the area of child abuse and Munchausen Syndrome, that Michael was a victim of Munchausen Syndrome by Proxy or medical child abuse. Dr. Jenny did not have complete familiarity with Michael's medical history prior to March, 2000, and thus could not support DCF's theory that the mother had exaggerated Michael's symptoms and need for medication for a long period of time. Nonetheless, Dr. Jenny did assist the court by describing how the events of March, 2000, when coupled with other factors such as mother's medical expertise as a licensed professional nurse, her desire to debate medicine with Michael's doctors, Michael's status as being chronically ill, and the fact that the father, as a long distance trucker, was not in the home on a daily basis, all fit the profile of a Munchausen case.
Accordingly, this court finds Michael to be neglected and uncared for as alleged. The court credits Dr. Jenny's testimony that, when a Munchausen victim is removed from the home, the parent will often turn her attention to a remaining child. Accordingly, the court adjudicates nine year old Joseph neglected in that, as alleged, he is "being permitted to live under conditions, circumstances or associations injurious to his well-being." General Statutes § 46b-120 (8)(C). Given the facts of this case, the court finds that the best interest of Michael and Joseph warrant their commitment to DCF for a period of one year. Within two weeks, DCF shall submit proposed specific steps which, if approved, will become part of the disposition of this case.
It is so ordered.
Carl J. Schuman CT Page 4611 Judge, Superior Court